# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| **BIOFIRE DIAGNOSTICS, LLC,** | )<br>) |
| **Plaintiff,** | )<br>)  Case No. _____<br>) |
| v. | )<br>)  **BIOFIRE'S MOTION TO COMPEL**<br>)  **COMPLIANCE WITH SUBPOENA** |
| **SONORAN DESERT PATHOLOGY ASSOCIATES, LLC** | )<br>)<br>) |
| **Defendant.** | )<br>) |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1
II. BACKGROUND ..........................................................................................................1
    A. USMN v. BioFire et al. Lawsuit................................................................................1
    B. Sonoran/Verify Health Subpoena.............................................................................2
III. ARGUMENT ................................................................................................................4
    A. Legal Authority ........................................................................................................4
    B. Sonoran Has Waived Objections to BioFire's Subpoena. ...............................4
    C. BioFire's Subpoena Seeks Relevant Discovery. ..............................................5
        1. Requests Related to Sonoran's Assistance with the USMN Lawsuit ........5
        2. Requests Related to the Sale of BioFire Products....................................6
        3. Requests Related to Agreements With USMN .........................................7
        4. Requests Related to USMN's Alleged Trade Secrets ...............................8
        5. Requests Related to Diligence of and Investment Into USMN .................8
    D. BioFire's Subpoena is Proportionate. .................................................................9
    E. Application of Arguments to Specific Requests ............................................10
IV. Local Rule 7.1 Pre-Filing Conference ............................................................................14
V. Conclusion ....................................................................................................................15

# TABLE OF AUTHORITIES

                                                                                                 **Page**

**CASES**

*BCOWW Holdings, LLC v. Collins*,
    No. SA-17-CA-00379-FB, 2017 WL 3868184 (W.D. Tex. Sept. 5, 2017)..............................7

*Davis v. Small Business Invest. Co.*
    535 S.W.2d 740 (Tex. Civ. App. – Texarkana 1976, writ ref'd n.r.e.) ....................................7

*Gonzalez v. GEICO Gen. Ins. Co.*,
    No. 8:15-CV-0240-T-30TBM, 2016 WL 7732310 (M.D. Fla. Jan. 20, 2016).........................9

*Johnson v. R.J. Reynolds Tobacco Co.*,
    No. 212CV618FTM29UAM, 2013 WL 12155829 (M.D. Fla. Oct. 21, 2013) ........................8

*Monat Glob. Corp. v. Miller*,
    No. 3:18-MC-24-J-32MCR, 2018 WL 8578017 (M.D. Fla. Nov. 27, 2018)......................4, 10

*Sciarretta v. The Lincoln Nat'l Life Ins. Co.*,
    No. 9:11-CV-80427-DMM, 2011 WL 13116845 (S.D. Fla. Dec. 7, 2011) ..........................4, 9

*U.S. Medical Networks LLC v. BioFire Diagnostics LLC, et al.*,
    No. 3:19-cv-01848-E (N.D. Tex.)..............................................................................................1

**STATUTES**

Texas Uniform Trade Secrets Act..................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1)...................................................................................................................3

Fed. R. Evid. 401 ............................................................................................................................4

I.  **INTRODUCTION**

Sonoran Desert Pathology Associates, LLC ("Sonoran" or "Verify Health")[1] has failed to substantially respond to a subpoena that BioFire Diagnostics, LLC's ("BioFire") served on May 15, 2020 (the "Subpoena").  The Subpoena seeks information vital to BioFire's defense against a damages claims for approximately $73 million, and Sonoran's failure to substantially comply with the Subpoena is without legal justification.  Moreover, Sonoran failed to object to BioFire's Subpoena as required by the Federal Rules of Civil Procedure and has thus waived its objections to BioFire's requests.  Thus, Biofire moves for an order compelling Sonoran to comply with its Subpoena within ten days of the Court's order.

II. **BACKGROUND**

A.  *USMN v. BioFire et al.* **Lawsuit**

BioFire is an industry leader in medical diagnostic testing.  In May 2018, BioFire agreed to enter into a Laboratory Services Provider Agreement with US Medical Clinics, LLC ("USMC"), a shell company created by the members of US Medical Networks, LLC ("USMN"), that allowed USMC to lease BioFire instruments and sell BioFire products in conjunction with USMC/USMN's ancillary office management services.  BioFire signed an amended agreement with USMN in January 2019.  However, USMN failed to live up to its sales projections and failed to pay BioFire's invoices, ultimately incurring hundreds of thousands of dollars in past-due, unpaid bills.

After unsuccessfully trying to encourage USMN to pay its outstanding invoices, BioFire terminated its agreement with USMN.  The following day, USMN sued BioFire in the Northern District of Texas, contending, among other things, that had Biofire not terminated its agreement with USMN, USMN would have earned approximately $250 million in revenues and $93 million

---

[1] BioFire understands that Sonoran does business under the name "Verify Health."  *See* Declaration of M. Russell ("Russell Decl.") at ¶ 3.  Thus, Verify Health records and documents will be within the possession and control of Sonoran.

in profits between June 2019 and December 2021. *See U.S. Medical Networks LLC v. BioFire Diagnostics LLC, et al.*, No. 3:19-cv-01848-E (N.D. Tex.) (the "USMN Lawsuit").

USMN sued BioFire for, among other claims, breach of contract, tortious interference with economic relations, and violations of the Texas Uniform Trade Secrets Act. In connection with their claims for tortious interference with economic relations, USMN is seeking approximately $73 million in lost profits discounted back to present value, per their expert's report.

In its Second Amended Complaint, USMN alleges that it worked with Verify Health in 2019 to market its services to healthcare providers. It claims that based on Verify Health's connections, USMN was likely to enter into agreements with those providers. USMN also alleges that it entered into an agreement with a large medical group based on its relationship with Verify Health. In support of these allegations, Terry McBride, one of USMN's owners, testified that an owner of Verify Health would help USMN enter agreements with a significant number of health providers.

USMN's damages expert's report cites an affidavit provided by an owner of Sonoran/Verify Health (Keaton Langston), as well as documents including an email involving Keaton Langston and his brother, Joey Langston, to claim that USMN could have leveraged its relationship with Verify Health and Keaton Langston to enter into agreements with thousands of additional healthcare providers. USMN's damages expert concludes that USMN is owed $73 million in lost profit damages. The expert relies heavily on Keaton Langston's testimony and emails.

**B.     Sonoran/Verify Health Subpoena**

On May 15, 2020, an authorized individual accepted service for the Subpoena. *See* Russell Decl., Exhibit 1. Sonoran did not respond to or object to the Subpoena before June 17, 2020, the date designated for compliance. *Id.* at ¶ 4. On Friday, July 10, BioFire's attorneys met and conferred with Sonoran's attorneys regarding the Subpoena. *Id*. At that time BioFire's attorneys requested Sonoran's attorneys let BioFire know in the next week whether Sonoran had any

objections to the service of the Subpoena or whether BioFire needed to serve a different Subpoena to reach the Verify Health entity. *Id.* BioFire's attorneys also granted Sonoran an extension to comply with the Subpoena to July 24, 2020, with the understanding that the parties would meet and confer at that time should Sonoran need a further extension to August 1, 2020. *Id.* Sonoran did not respond to BioFire. BioFire reached out again to set up a meet and confer on the Subpoena on July 28, August 3, and August 13. *Id.* at ¶ 5. On August 27, 2020, Sonoran produced documents in response to the Subpoena. *Id.* at ¶ 6. However, Sonoran's production included fewer than 200 pages of documents, many of which were multiple copies of the same document. *Id.* BioFire's counsel sent correspondence to Sonoran's counsel on September 8, 2020, requesting that Sonoran produce additional documents to comply with Subpoena request numbers 1, 2, 5, and 8-12, or that Sonoran confirm it did not have any additional documents responsive to those requests. *Id.* at ¶ 7. BioFire followed up on September 14 and September 23. *Id.* Sonoran did not produce any additional documents or answer BioFire's requests. *Id.*

On the evening of September 25, 2020, BioFire learned that one of USMN's damages experts relies heavily on an affidavit from Keaton Langston, an owner of Sonoran/Verify Health, along with documents involving Keaton Langston, to support a conclusion that USMN would have entered into agreements with thousands of healthcare companies. *Id.* at ¶ 8. The expert finds that USMN has suffered lost profit damages of approximately $73 million dollars. *Id.* The next day, BioFire again followed up with Sonoran's counsel, explaining that if Sonoran continued to refuse to supplement its production, BioFire would be required file a motion to compel Sonoran's compliance on October 2, 2020.[2] *Id.* That communication did not yield any compliance by Sonoran. *Id.*

---

[2] Discovery deadlines are rapidly approaching in the USMN Lawsuit. Currently, BioFire's opposing report deadline is October 26, 2020. BioFire filed a motion that included a request to extend this deadline to December 4, 2020. USMN did not oppose that part of the motion that pertained to extending deadlines, and the motion is currently pending. Even if BioFire's extension request is granted, BioFire needs documents from Sonoran/Verify Health as soon as possible so

**BIOFIRE DIAGNOSTICS LLC'S MOTION TO COMPEL**
**COMPLIANCE WITH SUBPOENA** Page 3

### III.  ARGUMENT

### A.  Legal Authority

Under the Federal Rules of Civil Procedure "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and…the fact is of consequence in determining the action." Fed. R. Evid. 401.

"Generally, the scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26." *Sciarretta v. The Lincoln Nat'l Life Ins. Co*., No. 9:11-CV-80427-DMM, 2011 WL 13116845, at *1 (S.D. Fla. Dec. 7, 2011).  Courts consider relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947))).

### B.  Sonoran Has Waived Objections to BioFire's Subpoena.

Sonoran did not object to the Subpoena within the time designated for compliance or move for a Motion to Quash or Modify the Subpoena.  *See supra* at II.B.  Thus, under these circumstances, it has waived any objections to the Subpoena, and BioFire's Motion should be granted.  *See Monat Glob. Corp. v. Miller,* No. 3:18-MC-24-J-32MCR, 2018 WL 8578017, at *2 (M.D. Fla. Nov. 27, 2018) (granting motion to compel production when subpoenaed individual, *inter alia*, "has failed to advance any compelling reasons why this Court should entertain objections to the Subpoena now when the time to do so has expired.").  Nevertheless, even had Sonoran not waived its objections, it should be compelled to comply with the Subpoena, because BioFire's requests are both relevant and proportional to the USMN Lawsuit.

---

that BioFire can decide whether to take additional depositions, and so that BioFire's experts damages experts can consider any relevant produced documents.   Russell Decl. at ¶ 9.

### C.     BioFire's Subpoena Seeks Relevant Discovery.

There can be no dispute that the documents sought by the Subpoena are both relevant to BioFire's defenses and proportional to the lawsuit at issue. Verify Health's actions were specifically cited in USMN's complaint as providing the basis for a significant part of its $73 million lost profit damages claims against BioFire. It is because of its relationship with Verify Health that USMN believes it would have signed agreements with thousands of clinics and made millions in profit but for BioFire's termination of the parties' agreement. Indeed, USMN's damages expert relies on an affidavit involving Sonoran owner Keaton Langston to support a claim for approximately $73 million in lost profits damages in large part because Keaton Langston testifies he would have been able to sell BioFire products to thousands of clinics for USMN.

Moreover, USMN alleges in its Complaint that it used Verify Health as a marketing partner, suggesting that Verify Health is well familiar with USMN's claimed marketing, customer information, and software trade secrets. BioFire's subpoena to Sonoran involves only twelve requests related to these topics, and BioFire has now only requested that Sonoran supplement its production (or confirm it does not have any further documents) for a subset of these requests. As explained below, documents responsive to the Subpoena are highly relevant to USMN's trade secret, breach of contract, and damages claims.

### 1.     Requests Related to Sonoran's Assistance with the USMN Lawsuit

As explained above, it has become clear that Sonoran has been assisting USMN with its damages claims. Specifically, Sonoran owner Keaton Langston has provided an affidavit to USMN's expert providing that he would have helped USMN make sales to thousands of healthcare clinics had BioFire not terminated its agreement with USMN. Multiple of BioFire's requests require Sonoran to produce documents that would include those relating to how it has assisted USMN in its damages arguments. *See, e.g.*, Exhibit 1, Request Nos. 1A (seeking communications between Sonoran and individuals at USMN relating to BioFire), 1C (seeking communications between Sonoran and individuals at USMN relating to BioFire products), 1F (seeking

communications between Sonoran and individuals at USMN relating to the placement or sale of BioFire products to healthcare providers), 1G (seeking communications between Sonoran and individuals at USMN relating to service agreements between USMN and Sonoran affiliated companies), 8 (seeking communications between Sonoran and any healthcare provider relating to USMN or BioFire, including to the marketing, placement or sale of BioFire products), and 9 (seeking documents relating to agreements between Sonoran and USMN).

Documents relating to Sonoran's assistance in helping USMN make its claim that it could have helped them sell BioFire's products to thousands of healthcare providers are clearly relevant to the USMN Lawsuit and vital to BioFire's defenses against USMN's lost profit arguments.

2. Requests Related to the Sale of BioFire Products

The Subpoena also generally seeks documents related to BioFire, the marketing and sale of BioFire's products, and BioFire's solutions. *See* Exhibit 1, Request Nos. 1, 2, 3, 5, 8, 11, 12. Any documents responsive to the requests would show whether Verify Health was successfully marketing the BioFire products for USMN, and whether it had contacted thousands of clinics to sell BioFire products on USMN's behalf. These are key questions underlying USMN's claim for breach of contract damages, and USMN's damages expert focuses on these issues in his analysis.

In the USMN Lawsuit, USMN claims that BioFire is misappropriating USMN's alleged marketing, customer, and software trade secrets for its sales and own ancillary office service offerings. BioFire denies that any USMN information shared with BioFire was confidential or trade secret. Moreover, BioFire has always had its own ancillary customer solutions and marketing strategies, none of which are based on USMN's alleged trade secrets. Documents responsive to the requests that discuss BioFire's solutions could show whether USMN and its partners were aware of BioFire's solutions in 2019, and whether they knew that BioFire's solutions were different from USMN's ancillary services (rather than improperly based on USMN's ancillary services). Thus, such documents are relevant to USMN's claims of trade secret misappropriation based on its trade secret services software.

In addition, documents responsive to these requests are relevant to the value of USMN's alleged trade secrets. If such documents show that Verify Health did not consider USMN's office management services in its marketing efforts for BioFire products, this could make less probable USMN's claim that its trade secret services software is valuable. If Verify Health marketed BioFire's products in a different way from USMN, this could also show that USMN's marketing trade secrets are not valuable.

### 3.  Requests Related to Agreements With USMN

The Subpoena also seeks documents related to agreements with USMN and/or USMC. *See* Exhibit 1, Request Nos. 1, 2, 3, 9. Documents responsive to these requests could provide additional information related to USMN's financial structure and profitability, and thus could make more or less probable USMN's claims for damages. USMN claims that, despite its inability to pay its invoices, increasingly dire economic circumstances, and failing business model, there was a reasonable probability that USMN would have had continuing business relations with healthcare providers and would have gained additional contracts with providers had BioFire not terminated the agreement. BioFire, on the other hand, denies that USMN could have ever been profitable under USMN's flawed business model. Thus, documents showing USMN's profitability or lack thereof would be relevant to their lost profits argument. *See Davis v. Small Business Invest. Co*. 535 S.W.2d 740 (Tex. Civ. App. – Texarkana 1976, writ ref'd n.r.e.) (upholding denial of lost profits damages where, inter alia, the plaintiff "was in severe economic difficulty and had never operated at a profit.").

Documents related to USMN and USMC's agreements are also relevant to USMN's claims for trade secrets. USMN has alleged it kept all of its trade secrets, including its software trade secrets, confidential, as required under Texas law. Thus, whether USMN had any agreements with Verify Health or Sonoran that included confidentiality terms would make more or less probable USMN's argument that it protected its trade secrets with confidentiality agreements. *See BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *16 (W.D. Tex. Sept.

5, 2017) ("[Plaintiff] had the knowhow and sophistication to require non-disclosure agreements…That [it] did not also require vendors…to sign confidentiality agreements strongly suggests that it did not regard this information as secret.").

    4.    <u>Requests Related to USMN's Alleged Trade Secrets</u>

The Subpoena also seeks documents related to USMN's alleged trade secrets and ancillary office management services. *See* Exhibit 1, Request Nos. 10 and 12. Documents responsive to these requests are relevant and deserve to be considered in the preparation of BioFire's defenses. For example, as explained above, documents Sonoran/Verify Health may have regarding USMN's services could make more or less probable USMN's claims that its trade secret software services are important in marketing BioFire products and thus highly valuable. If Sonoran does not have information about the ancillary services, but still marketed the BioFire products to hundreds or thousands of clinics, the services are likely not valuable. *See also supra* at Section III.C.2.

Documents Sonoran/Verify Health may have regarding USMN's marketing strategies and/or marketing materials could also show whether Sonoran considered such marketing strategies highly confidential and proprietary, as alleged by USMN. For example, if Sonoran has documents showing that it used a call center in a similar manner as USMN, this would undercut USMN's claim that it had invented the idea of using a call center to sell to health clinics.

Because the Subpoena requests seek relevant information, BioFire's Motion should be granted. *See Johnson v. R.J. Reynolds Tobacco Co.*, No. 212CV618FTM29UAM, 2013 WL 12155829, at *1 (M.D. Fla. Oct. 21, 2013) ("[T]he materials sought by the parties are slides containing Decedent's pathology and cytology specimens. This pathology material is highly relevant to the instant action… AmeriPath must produce the requested pathology material[.]").

    5.    <u>Requests Related to Diligence of and Investment Into USMN</u>

The Subpoena also seeks documents related to Verify Health's due diligence and investigation of USMN, USMC and/or BioFire, and possible investment into USMN. *See* Exhibit 1, Request Nos. 1, 2, 3, 4, 6, 7.

Documents responsive to the Subpoena on this topic thus could support BioFire's defenses that USMN was not a profitable company and would not have made millions of dollars of sales but for BioFire's termination of its agreement. *See Sciarretta*, 2011 WL 13116845, at *2 (" It is evident that the requested tax returns are relevant to Lincoln's case to prove the Cottons' net worth and determine whether misrepresentations were made in the Cotton Policy application…and accordingly should be disclosed.").

Documents responsive to the Subpoena also could make more or less probable facts underlying USMN's claims for lost profit damages. If Verify Health's investigation of USMN revealed that USMN was in economic difficulty throughout 2019, this would undercut USMN's claims for lost profit damages.

Documents responsive to the Subpoena also could support BioFire's claims that USMN did not have the money to pay the invoices it owed to BioFire, and thus could not have made an arrangement with BioFire to settle its debts, a fact highly relevant to BioFire's defense of anticipatory breach. *Cf. Gonzalez v. GEICO Gen. Ins. Co.*, No. 8:15-CV-0240-T-30TBM, 2016 WL 7732310, at *3 (M.D. Fla. Jan. 20, 2016) ("[I]t does appear that certain of these emails could relate to the possibility of settlement of the underlying action, and thus may be relevant to GEICO's defense that there was no realistic possibility of settlement[.]").

**D.      BioFire's Subpoena is Proportionate**.

BioFire's Subpoena requests are not only relevant but also proportional to the needs of the case. As explained above, BioFire's requests are limited to a few related topics. BioFire also expects that the timeframe of the documents requested is narrow, with responsive documents likely dated no earlier than 2019.

Moreover, as explained above, Verify Health's actions were cited in USMN's complaint as providing the basis for a significant part of its claims against BioFire, and were relied on by USMN's damages expert. Verify Health, and thus Sonoran, holds key documents that support USMN's claims that it would have made profitable agreements with thousands of clinics had

BioFire not terminated its agreement with USMN. Any inconvenience in gathering and producing such documents pales in comparison to the size and significance of the USMN Lawsuit. The Subpoena is thus not disproportionate to the needs of the USMN Lawsuit, and BioFire's Motion should be granted. *See Monat*, 2018 WL 8578017, at *3 ("The subpoena request for Facebook Group data is not disproportionate to the needs of the case given that Monat seeks damages in excess of $225,000.").

**E.    Application of Arguments to Specific Requests**

Request No. 1

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 1. That request provides, in full:

> All Communications between You and Terry McBride, Jarrod Pettit, or anyone else at USMN or USMC Relating to any of the following topics:
> (a) BioFire;
> (b) Any BioFire® FilmArray® Products;
> (c) USMN;
> (d) USMC;
> (e) Any actual or proposed agreements between USMC or USMN and BioFire;
> (f) The possible placement of BioFire® FilmArray® Products at or sale of BioFire® FilmArray® Products to hospitals, point-of-care healthcare providers and other healthcare facilities by Sonoran or Verify Health or any other entity with which You had/have a relationship of some kind;
> (g) Any possible Master Services Agreement between USMC or USMN and You, Verify Health, or any other entity with which You had/have a relationship of some kind;
> (h) Any possible investment in USMN – directly or indirectly – by Sante Ventures or investors working with Sante Ventures;
> (i) Any due diligence regarding USMN performed by You, Verify Health, Sante Ventures or by persons who conducted said due diligence on behalf of Yourself, Verify Health, Sante Ventures or Sonoran; and/or
> (j) Any decision not to enter into a Master Service Agreement, not to invest in USMN and not to otherwise do business with USMN by You, Verify Health or Sante Ventures.

Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.1-3, C. 5 and D.

Request No. 2

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 2. That request provides, in full: "All Communications between You and Keaton Langston, Dan Hurt, Verify Health, Sante Ventures or Sonoran Relating to any of the topics (a) – (j) in Document Request No. 1." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.2-3, C.5 and D.

Request No. 3

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 3. That request provides, in full "All Documents that You understood were sent to You and all Documents that You created in connection with any of the Topics (a) – (j) in Document Request No. 1." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. BioFire requested further documents in response to request number 1, and thus for the same reasons as request no. 1, this request is relevant and proportionate for the reasons set forth above in Section III.C.2-3, C.5 and D.

Request No. 4

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 4. That request provides, in full "All presentation slides and/or pitch decks Relating to USMN or BioFire." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.5 and D.

Request No. 5

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 5. That request provides, in full: "All Communications and Documents Relating to the actual or proposed marketing, placement, and sale of any BioFire® FilmArray® Product by You or Verify Health." Sonoran did not provide specific objections to this request, let alone assign grounds to

any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.1-3 and D.

### Request No. 6

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 6. That request provides, in full: "All Communications and Documents constituting or Relating to Your actual or prospective investment(s) of funds in (i) USMC and/or USMN, (ii) Sante Ventures, (iii) Verify Health and/or (iv) Sonoran for the purpose of marketing and/or selling BioFire® FilmArray® Products." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.5 and D.

### Request No. 7

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 7. That request provides, in full: "All Documents reflecting any due diligence, research, and investigation that You, Verify Health or Sante Ventures performed regarding USMN, USMC, and/or BioFire." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.5 and D.

### Request No. 8

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 8. That request provides, in full: "All Communications between You, Keaton Langston, Dan Hurt, Verify Health or Sante Ventures and any hospital, point-of-care healthcare provider and/or other healthcare facility Relating to USMN, USMC, BioFire, and/or BioFire® FilmArray® Product(s), including but not limited to the marketing, placement or sale of any BioFire® FilmArray® Product." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.1-2 and D.

Request No. 9

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 9. That request provides, in full: "All Documents constituting and all Communications Relating to any agreement between You and USMC, USMN, Jarrod Pettit, Terry McBride, and/or any other member, owner, or partner in USMC and/or USMN." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.1, C.3 and D.

Request No. 10

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 10. That request provides, in full: "All Communications Relating to USMC's and/or USMN's Ancillary Services." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.4 and D.

Request No. 11

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 11. That request provides, in full: "l Communications and Documents Relating to BioFire's solutions that BioFire provides in conjunction with BioFire® FilmArray® Products, including, but not limited to, any BioFire Software, BioFire® FilmArray® Link, reimbursement and market access support, Syndromic Trends, and antibiotic usage stewardship." Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.2 and D.

Request No. 12

BioFire requests that the Court compel Sonoran to respond fully to Subpoena request no. 12. That request provides, in full:
> All Communications and Documents Relating to USMC's and/or USMN's marketing strategies and/or marketing materials, including, but not limited to, (i) the use of call centers; (ii) the use of Salesforce software, (iii) tracking call center metrics, (iv) the development of selling techniques; (v) the development of

training materials, (vi) the use of any apex marketing strategy, i.e., formulating and leveraging relationships with executive-level individuals or healthcare provider groups that owned or control numerous clinics; (vii) the provision of ancillary products such as nasal swabs and collection kits to potential or actual customers; (viii) the use of short term contracts; (ix) the tracking of customers usage of BioFire® FilmArray® Panels, and/or (x) the use of "no upfront cost" programs.

Sonoran did not provide specific objections to this request, let alone assign grounds to any specific objection. This request is relevant and proportionate for the reasons set forth above in Section III.C.4 and D.

### IV.     Local Rule 7.1 Pre-Filing Conference

As provided *supra,* on Friday, July 10, 2020, BioFire's attorneys met and conferred with Sonoran's attorneys regarding the Subpoena. BioFire's attorneys requested Sonoran's attorneys let BioFire know in the next week whether Sonoran had any objections to the service of the Subpoena or whether BioFire needed to serve a different subpoena to reach the Verify Health entity. BioFire also granted Sonoran an extension to comply with the Subpoena to July 24, 2020, with the understanding that the parties could meet and confer on or before that date should Sonoran need a further extension to August 1, 2020.

When Sonoran never responded to the Subpoena, BioFire's attorneys sent Sonoran's attorneys an email on July 28, 2020 requesting an additional meet and confer. Again receiving no response, BioFire's attorneys sent Sonoran's attorneys an email on August 3, 2020 requesting a meet and confer that week on the Subpoena. When Sonoran failed again to respond, BioFire's attorneys emailed Sonoran's attorneys on August 13, 2020, providing that BioFire would need to file a motion to compel should Sonoran continue to ignore its obligations to comply with the Subpoena. After Sonoran produced some documents in response to the Subpoena, BioFire reached out again to request that Sonoran supplement its production or confirm it had no additional responsive documents for the requests. BioFire reached again out on September 23 and September 26, explaining that if Sonoran did not respond, BioFire would be required to file a motion to

compel. Sonoran did not supplement its production or substantially respond to BioFire's Subpoena. Sonoran did not respond to BioFire.

## V. Conclusion

For the reasons discussed above, BioFire respectfully requests that this Court issue an order compelling Sonoran to comply with its Subpoena served on May 15, 2020 and produce any documents it may possess that are responsive to BioFire's subpoena within ten days of the date of its order, or confirm that it has no further documents to produce.

Dated: October 2, 2020

Respectfully submitted,

*/s/ Christopher R.J. Pace*
Christopher R.J. Pace
Florida Bar No. 0721166
Email: crjpace@jonesday.com
JONES DAY
Brickell World Plaza
600 Brickell Avenue Suite 3300
Miami, Florida 33131
T: 305-714-9730
F: 305-714-9799

ATTORNEY FOR MOVANT
BIOFIRE DIAGNOSTICS, LLC